### No. 41,561

In the Matter of the Estate of John C. Kelly, Deceased (WALTER R. BURDGE, Executor of the Estate of John C. Kelly, deceased, and SARAH F. KELLY, *Appellees,* v. MARY SUZANE ALLAN and LAURESTA LYNN BROOMFIELD, Minors, by J. B. GRANT, Guardian *Ad Litem, Appellants*).

(347 P. 2d 428)

Opinion filed December 12, 1959.

*J. B. Grant,* of Wichita, was on the briefs for the appellants.

*Mark H. Adams, Charles E. Jones, William I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II,* and *John S. Seeber,* all of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: The estate of John C. Kelly, deceased, is in the process of administration in the probate court of Sedgwick county. Mr. Kelly died testate, and named Walter R. Burdge as his executor and trustee of the elaborate testamentary trusts created in his will. Mr. Burdge was duly appointed, qualified and is acting as the executor. He duly filed a petition for the construction of the will in probate

court. This petition was transferred to the district court for hearing and decision.

The petition of the executor sets out one question for determination. It is alleged that the estate has not been finally distributed and closed because of a controversy with the United States Treasury Department, Internal Revenue Service, as to the amount of federal estate tax due from the estate; that the executor desires to await the settlement of this controversy so that the tax finally determined can be paid before final settlement of the estate. It is further alleged that the widow of the testator, Sarah F. Kelly, survived him, and has requested distribution of the estate to remove any doubt as to her right to exercise the power of appointment granted to her under the provisions of the will; that a construction of the will is necessary to determine whether the widow having survived her husband became vested upon testator's death with the beneficial interest given and devised to her under Item six (1) of the will with a power of appointment thereof, or whether such interest is conditioned upon the widow surviving the date of the closing and distribution of the estate by the executor.

The district court heard the matter and rendered its judgment holding that the widow's beneficial interest under the will, including the power of appointment granted to her as to the estate given to her under the will, vested at the date of testator's death and that she might exercise such power without waiting for the date of distribution of the estate.

Within due time, the appellants, two great grandchildren of the testator, appealed the decree of the district court to this court. Appellants hold contingent interests under the will and are represented by their duly appointed guardian ad litem.

It readily appears that the ultimate question to be decided upon this appeal turns upon the construction of the will of the testator. The will is long and elaborate and therefore will not be included in this opinion in full, but an adequate synopsis of the same taken from the briefs of the parties is appended to the opinion for ready reference. The italics in the appendix have been supplied to emphasize important provisions of the will.

In approaching the construction of a will in this jurisdiction, we must take note of the cardinal principle announced by this court in many decisions that the intention of the testator is to be gathered from a reading and study of the instrument as a whole (*Commercial*

*National Bank v. Martin,* 185 Kan. 116, 120, 340 P. 2d 899; *Johnston v. Gibson,* 184 Kan. 109, syl. ¶ 3, 344 P. 2d 348; *In re Estate of Yetter,* 183 Kan. 340, 328 P. 2d 738; *In re Estate of Blank,* 182 Kan. 426, 320 P. 2d 775; *In re Estate of Charowhas,* 181 Kan. 322, 310 P. 2d 947; *In re Estate of Woods,* 181 Kan. 271, 277, 311 P. 2d 359; *In re Estate of Cribbs,* 180 Kan. 840, 308 P. 2d 111).

The above construction would seem to have special virtue as it is applied to this case. If only the provisions of Item six (3) be read separately one has some doubt as to the meaning of the will. On the other hand, if the will is read as a whole and the scheme of the testator is analyzed, there is little room left for doubt. From the will so considered, the court is convinced that the beneficial interest of the widow became vested at the time of her husband's death and that this included the right to exercise the power of appointment given to her under Item eight (3).

Despite the fact that we believe a careful reading of the will is sufficient to disclose the soundness of the above conclusion, we shall point out briefly some of the salient considerations. Without doubt, the primary purpose of the will was to give the testator's wife the fullest security during her lifetime and to provide for the fullest, legal marital deduction for her benefit under the regulations of the internal revenue regulations in force at the time of the testator's death. Testator's concern for his wife's welfare is shown by the fact that in Item nine (1), the trustee is directed to make available for the wife's benefit the income or principal of Kelly Trust B, if that should be necessary. In fact, in every part of the will, testator shows his primary interest in his wife's welfare as stated in plain language in the last cited paragraph.

Turning to other ideas expressed in the will, in the first paragraph the will provides for disposition of my property "effective at my death." In Item six (2), it is provided that "in event my wife shall survive me, my trustee above named shall *immediately divide all trust property into two separate parts* . . ." The trustee and the executor under all conditions and events were intended to be the same individual. There would seem to be no reason why the fiduciary could not act in two capacities at the same time, and immediately set up the trusts provided in the will subject to the demands of the payments of debts, taxes and costs of administration due from the estate.

Item eight provides that the corpus of Kelly Trust A shall be the

amount of the marital deduction under the internal revenue laws in force at the time of testator's death. The wife was given absolute beneficial interest of this trust together with an absolute power of appointment. If these very important provisions do not vest beneficially in the wife at the time of testator's death, they seem to become meaningless. This alone would seem sufficient to show testator's intent beyond any possibility of question.

In subparagraph (3) in speaking of the power of appointment, the will continues: "Said right and power to appoint is expressly made exercisable by the said Sarah F. Kelly *alone, at any time, and in all events."*

Certainly, "at any time" would include that period in which the estate was in process of administration.

Finally, in Item twelve the will directs the executor to begin the payments provided to be made by the trustee and to continue the same until the fiduciary shall take over fully as trustee. This provision is in harmony with the above mentioned provisions of Item six (2) indicating that testator intended the trusts to be operative as far as possible from the date of his death.

Now turning to the questioned language found in Item six (3): "If my wife shall not survive me" is clear beyond any possibility of cavil. The rest of the sentence as to her death before distribution to the trustee must be construed to refer only to any residue of the property given to the surviving wife which she has not disposed of by power of appointment. Attention is directed to the provisions of Item eight (4), where such undisposed of property shall become part of Kelly Trust B.

Such construction from a reading of the will as a whole is almost inescapable and gives meaning to every part of the will. In closing, it may be added that if such a construction of the will were at all in doubt, which we think is not true, this court has on several occasions adhered to the well-known rule that it will favor an early vesting of testamentary gifts (*Cramer v. Browne,* 159 Kan. 423, syl. ¶ 4, 155 P. 2d 468).

In our opinion, the decision of the learned trial court was entirely correct, and that decision should be affirmed.

It is so ordered.

## APPENDIX

SYNOPSIS OF THE WILL OF JOHN C. KELLY

(Italics supplied)

The first paragraph of decedent's Will is as follows:

"KNOW ALL MEN BY THESE PRESENTS, That I, JOHN C. KELLY, of the City of Wichita, County of Sedgwick, and State of Kansas, being of sound mind and disposing memory and not under any restraint, *but desiring to make disposition of my property, effective at my death, do hereby make, publish, and declare this to be my Last Will and Testament,* hereby revoking and making void any and all former wills and codicils heretofore made by me at any time."

An analysis of the further provisions in the Will is as follows:

Item One directs the payment of lawful debts.

Item Two directs the payment of federal estate taxes and all inheritance and succession taxes.

Item Three is a special bequest to decedent's grandson of certain personal items of jewelry and hunting and fishing equipment.

Item Four was a bequest to decedent's brother.

Item Five gave the family automobile, household furniture, etc., and homestead interest to decedent's wife Sarah F. Kelly if she survived decedent.

Item Six in decedent's Will provides as follows:

"ITEM SIX: (1) All the rest, residue, and remainder of my property, real and personal, and wheresoever situate, of which I shall die seized or possessed, I give, devise, and bequeath unto Walter R. Burdge, as trustee, in trust and upon trust for the use and benefit of my wife, Sarah F. Kelly, and my grandchildren, Frances Hasbrook Krause, George A. Krause, II, and Margaret Jane Davis-Allen, upon the terms and conditions herein set forth.

"2. *In event my wife shall survive me, my trustee above named shall immediately divide all the trust property into two separate parts or shares either by physical segregation of the assets or by the assignment or transfer of an undivided interest in the whole or any part of the trust property.* The first of said parts or shares shall be known as 'KELLY TRUST A,' and the second part or share shall be known as 'KELLY TRUST B.' KELLY TRUST B shall include all the rest and residue of my property after segregation, assignment, and transfer of said assets to KELLY TRUST A as hereinafter provided. Each part or share shall be held and administered as a separate and distinct trust for the benefit of the person or persons entitled thereto as hereinafter provided. A separate account shall be kept by my trustees of each of said trusts and the property of each shall be kept separate and apart from the other, although my trustee shall be permitted to make joint investments for and on behalf of both of said trusts, each trust contributing its pro rata share of funds used in making the said joint investments.

"(3) *If my wife shall not survive me, or if she should die prior to the time when my estate is closed and distribution made to the Trustee,* then only one trust shall be created which shall be known as the 'JOHN C. KELLY TRUST,' and such trust shall be administered and closed as is provided herein for the 'KELLY TRUST B.' "

Item Seven is a provision bringing the termination of the trusts created in the Will within a time in avoidance of the rule against perpetuities.

Item Eight is as follows:

"ITEM EIGHT: The following provisions shall apply to KELLY TRUST A."

"(1) *The shares alloted and set apart to* KELLY TRUST A *shall be an amount equal to the maximum marital deduction allowable with respect to my estate, under federal estate tax laws in effect at the time of my death; provided, however, the amounts allocated to my wife, pursuant to this Item, shall be reduced by the value of property qualifying for said marital deduction which passes or has passed to my wife, either under other provisions of this will or outside this will.* The amount of assets passing to my wife shall be determined before there is a reduction of my estate by reason of any debts, bequests, or any inheritance, estate, or transfer taxes as provided under Item Two hereof. In determining the specific assets passing to my wife under this item, the decision of my wife shall be final; *provided, however, her decision shall not include any property or interest therein with respect to which no marital deduction is allowable.* For the purposes of this item the value as finally determined for federal estate tax purposes shall control.

"(2) The entire net income from this trust shall be paid at least once each year and, if possible, in quarterly or monthly installments during the lifetime of wife.

"(3) My said wife shall have the right and power by will or other instrument in writing to appoint the entire corpus of said trust, or any part thereof, to herself, to her estate, or to any other person or persons free of this trust. *Said right and power to appoint is expressly made exercisable by the said Sarah F. Kelly alone, at any time, and in all events.*

"(4) Upon the death of my said wife, and in the event she has not exercised the foregoing power of appointment, then the balance in said KELLY TRUST A shall be distributed to KELLY TRUST B, and shall be held and distributed in accordance with the terms of said trust as hereinafter provided.

"(5) If possession by my trustee of any one or more of the powers or duties expressly or impliedly conferred or imposed upon said trustee by this will would prevent my said wife's interest in KELLY TRUST A from qualifying as an interest passing to her as my surviving spouse, and to no other person within the meaning of federal estate tax laws in effect at the time of my death, or would otherwise disqualify said trust for the marital deduction provided by said federal estate tax laws, then and in that event, notwithstanding any other express or implied provisions in this will contained, my said trustee of KELLY TRUST A shall possess no such disqualifying power or powers."

Item Nine relates to Kelly Trust B. Paragraph 1 under Item Nine reads as follows:

"(1) My trustee shall have the right and power in his uncontrolled and uncontrollable discretion to pay to my wife or for her benefit all or such part of the income from this trust, current or accumulated, as may in his judgment, be necessary for her support, maintenance, comfort, welfare or happiness, and any trustee shall have the further power, in case of emergency requirements or financial need, to invade the principal of KELLY TRUST B and use all or such part of such corpus as in the exercise of his sound judgment should be given to or used for the benefit of my wife, Sarah F. Kelly. It is the primary purpose of my will and the trusts created herein to fully and adequately provide for my wife if I should predecease her, and it is my wish and desire that this purpose should be kept in mind by my trustee and successor trustee in the administration of the trust to the end that she shall never be in want or financial distress even if this should result in the use of my entire estate."

The remaining Paragraphs (2), *et seq.*, of Item Nine relate to the distribution to decedent's grandchildren of Kelly Trust B after the death of decedent's wife Sarah F. Kelly.

Item Ten defines the words "trustee" and "net income" and specifies the trustee's powers in the administration and management of the trust estate.

Item Eleven designates the executor or successor executor.

Item Twelve expresses the power and authority of the executor in the operation of the estate and then specifically provides:

*"I hereby direct that my executor acting hereunder shall make the payments hereinbefore provided to be made by my trustee to the beneficiaries named herein at the time and in the manner hereinbefore set forth to be made by my trustee, and to continue to make said payments until my trustee shall qualify and receive the assets of the respective trust estates created by this will."*